Jesse T. DUKE;  Sidney W. Fox,
Plaintiffs–Appellees,

v.

UNIROYAL INCORPORATED;  Uniroy-
al Chemical Company, Incorporated,
Defendants–Appellants,

and

Norman R. Barden;  Joseph R. Bishop,
Defendants.   (Two Cases)

Sidney W. FOX, Plaintiff–Appellant,

Jesse T. Duke, Plaintiff,

v.

UNIROYAL INCORPORATED;  Uniroy-
al Chemical Company, Incorporated,
Defendants–Appellees,

and

Norman R. Barden;  Joseph R.
Bishop, Defendants.

Jesse T. DUKE;  Sidney W. Fox,
Plaintiffs–Appellants,

v.

UNIROYAL INCORPORATED;  Uniroy-
al Chemical Company, Incorporated,
Defendants–Appellees,

and

Norman R. Barden;  Joseph R.
Bishop, Defendants.

Nos. 89–1830, 89–1834, 90–1750
and 90–1757.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 5, 1990.

Decided April 1, 1991.

As Amended June 3, 1991.

James Gunter Billings, Kimberly Jo Korando, Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., for defendants-appellants.

Lynn Fontana, argued (Joyce L. Davis, Crisp, Davis, Schwenter, Page & Currin, Raleigh, N.C., on brief), for plaintiffs-appellees.

Before SPROUSE and NIEMEYER, Circuit Judges, and MICHAEL, District Judge for the Western District of Virginia, sitting by designation.

NIEMEYER, Circuit Judge:

Jesse T. Duke and Sidney W. Fox were discharged from employment with Uniroyal Chemical Company, Inc. on August 15, 1985, as part of a reduction in force. They filed suit, contending that age was a determining factor in the decision to terminate them and that Uniroyal violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1988). Following a two and one-half week jury trial, the jury returned a verdict and found in favor of Duke in the amount of $181,115 for loss of back pay and $387,216 for loss of future income, often referred to as "front pay." The jury also found in favor of Fox in the amount of $18,480 for back pay and $38,055 for front pay. Finally, the jury found that the violations were not willful and no liquidated damages were awarded. *See* 29 U.S.C. § 626(b). Following the verdict, the district judge denied Fox's motion for reinstatement and entered an award of attorneys' fees and costs in the amount of $298,130.81. 743 F.Supp. 1218.

Uniroyal charges error in virtually every aspect of trial. The numerous issues that it briefed on appeal may be grouped within the following more generalized contentions: (1) the jury verdict was unsupported by substantial evidence of age discrimination; (2) various rulings of the district court on the evidence were improper; (3) the district court abused its discretion in refusing to sever plaintiffs' claims for trial; (4) the instructions to the jury failed to accommodate adequately the particular facts in evidence; (5) front pay should not have been submitted to the jury; and (6) the district court abused its discretion in its award of attorneys' fees. Fox filed a cross appeal, contending that he was improperly denied reinstatement.

For the reasons that follow, we reject all challenges to the fairness of the jury trial and affirm the verdict of the jury except insofar as it awards front pay. We vacate the awards of front pay and the order denying reinstatement, with instructions to the district court to conduct an equity trial to determine what, if any, equitable relief is appropriate. We affirm the award of attorneys' fees.

I

Duke and Fox were employed with the Crop Protection Division of Uniroyal, Duke as a sales representative of Agri Chemicals in Region 13, and Fox as a sales development representative in Region 13/16. Both were terminated on August 15, 1985, as part of a reduction in force. At the time Duke was 51, having worked with Uniroyal for 16 years, and Fox was 50, having worked for 17 years. At about the same time when Duke and Fox were terminated, Joseph Bishop, 54, was also terminated and Norman R. Barden, 59, elected to take early retirement under a company sponsored program. Although both Bishop and Barden were also plaintiffs in the case below, their claims have since been settled.

Duke, Barden and Bishop were the oldest and longest tenured sales representatives in Region 13, and Fox, who was the only development representative to be terminated, was the oldest and longest tenured development representative in Region 13/16. Six months after Fox was terminated, Uniroyal retained him as an independent consultant, a position that he retained as of trial.

In early 1985, Uniroyal, Inc. was the subject of a hostile takeover attempt that threatened its chemical business. This prompted a leveraged buy out (the LBO) which resulted in the formation of Uniroyal Chemical Company, Inc. The LBO and weakening market conditions caused Uniroyal to restructure and reduce its work force. In selecting those to be terminated, Uniroyal applied employee performance criteria, focusing on the employee's ability to assume greater technical responsibility, demonstrated initiative in increasing sales of small volume products, and past performance ratings. Uniroyal contends that its particular decision to terminate Duke

was based on the fact that Duke's territory was eliminated and his customers were assigned to other territories. He was not reassigned because of his performance against the stated criteria. Similarly, Uniroyal claims that Fox was selected for termination because of his weakness in knowledge of herbicides and pesticides, which Uniroyal had decided to promote, and his inability to promote them.

At trial plaintiffs contended that the articulated reasons given by Uniroyal for their terminations were a pretext for age discrimination. They attempted to prove their case by indirect evidence under the procedure established for Title VII cases in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). It is unclear whether Uniroyal challenges the sufficiency of plaintiffs' evidence in establishing a prima facie case, but it adamantly contends that no evidence was presented to prove that its articulated reasons were a pretext. It urges that we reverse the district court's denial of its motion for a directed verdict and motion for judgment notwithstanding the verdict.

When determining whether the evidence is sufficient to support the jury's verdict, the evidence must be reviewed in the light most favorable to plaintiffs, giving them the benefit of all inferences. If, with that evidence, a reasonable jury could return a verdict in favor of plaintiffs, the court must defer to the judgment of the jury, even if the court's judgment on the evidence differs. *See Herold v. Hajoca Corp.,* 864 F.2d 317, 319 (4th Cir.1988), *cert. denied,* 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Gill v. Rollins Protective Services Co.,* 773 F.2d 592, 594 (4th Cir.1985).

In the context of the ADEA, a plaintiff must prove, with reasonable probability, that but for the age of the plaintiff, the employment decision adverse to the plaintiff would not have been made. Age must have been a determining factor. *See Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 239 (4th Cir.1982). That burden may be satisfied, as with any other case, by direct or circumstantial evidence.

Under the method of proof by circumstantial evidence established by *McDonnell Douglas,* when the plaintiff proves a prima facie case of age discrimination, the burden of going forward shifts to the defendant. If the defendant articulates a legitimate nondiscriminatory reason for the employment action, the plaintiff must then prove that the reason given was a mere pretext for discrimination and that age was a more likely reason for the employment action. *Hajoca,* 864 F.2d at 319; *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983).

In *Hajoca* and *Western Electric,* we adapted the elements for establishing a prima facie case to a reduction-in-force case brought under the ADEA and stated that the plaintiff must show:

> (1) [T]hat he is in the protected age group, (2) that he was discharged, (3) that at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations, and (4) that persons outside the protected age class were retained in the same position or that there was some other evidence that the employer did not treat age neutrally in deciding to dismiss the plaintiff.

*Hajoca,* 864 F.2d at 319 (citing *Western Elec.,* 713 F.2d at 1014–15).

That precise formulation, however, need not be rigidly applied, and differing factual circumstances may require adaptation. The first two elements—that a person was in the protected class and suffered an adverse employment action as a result of the reduction in force—are basic to every ADEA case. The third element, that the employee was performing to his employer's reasonable expectations, however, is an element that may often become irrelevant. When a reduction in force occurs, the terminated employees may well be performing to expectation, and the discharge of a specified group is driven by economic reasons. In selecting those employees who are to be discharged, employers have applied criteria unrelated to performance, such as by seniority or by department or division, or in response to future expected needs of the

company, or by combinations of them. When the selection process is based on performance, the criterion is more a question of relevant performance than one of not meeting employer expectations.

The fourth element outlined in *Hajoca*, that persons not protected by the ADEA were retained or that there was evidence that the employer did not treat age neutrally, often proves difficult to apply. A reduction in force decision may result not only. in the elimination of personnel, but also in the elimination of positions by the consolidation of functions, departments and territories. Moreover, such restructuring often causes employee transfers, in lieu of terminations. In these multifaceted circumstances, the question of whether a younger employee has been retained can become murky or even irrelevant. The alternative requirement of showing a lack of age neutrality is a broad criterion that may often be more suited to the method of proof of discrimination by direct evidence.

■ Under any formulation for establishing a prima facie case, the task of the plaintiff is to prove a set of circumstantial facts which, in the absence of a legitimate non-discriminatory explanation, leads one to conclude with reasonable probability that the adverse employment action was a product of age discrimination. Thus, tailoring the *Hajoca* formulation to this case, where legitimate business reasons led to a reduction of employees in an identified group or territory and the stated criterion for selection was employee performance, we hold that, to prove a prima facie case, the plaintiffs must establish that: (1) they were protected by the ADEA; (2) they were selected from the group or territory for termination; (3) they were performing at a level substantially equivalent to the lowest level of those retained in the group or territory; and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiffs were performing. Once a prima facie case is established, the employer may articulate a legitimate nondiscriminatory basis of selection, in which case the plaintiff bears the burden of demonstrating that the employer's basis was a mere pretext for discrimination and that age was a determining factor in the selection process.

■ While Uniroyal's challenge focuses most intensely on whether plaintiffs adequately proved that its articulated reasons were pretextual, it is not clear whether it concedes a prima facie case was established. However, the evidence supports the conclusion that plaintiffs did establish a prima facie case. Both Duke and Fox were over the age of 40 and protected by the ADEA, and both were involuntarily terminated as sales or development representatives in 1985. Substantial evidence was also offered to show that both Duke and Fox were performing at or better than the lowest level of those retained in the group or territory, although that evidence was disputed. Finally, evidence was offered that those selected for discharge were the oldest in the region and that younger, unprotected persons, who were not performing as well as plaintiffs, were retained or transferred. In addition, plaintiffs offered evidence that Uniroyal did not fully follow its own EEO policy of favoring employees with longevity in reductions in force. Uniroyal conceded in its brief that "[a]t best, such a deviation from its policy would allow the 'but for' inference [of age discrimination] to exist as a mere possibility along with others, such as Uniroyal's desire to use an age-neutral selection process to select the best qualified employees." Brief of Appellants at 32. In the aggregate this proof establishes a prima facie case.

Because Uniroyal articulated legitimate nondiscriminatory reasons for its selection of plaintiffs for discharge, *i.e.* that they were the least qualified for the existing and future needs of Uniroyal, the issue moved to the question of whether the plaintiffs offered substantial proof from which

a reasonable jury could conclude that the articulated reasons were a pretext for age discrimination.

When focusing on the sufficiency of evidence, taken in a light most favorable to plaintiffs, we act clinically in marshalling the evidence presented in favor of plaintiffs and disregard the substance of evidence offered by Uniroyal. We also must assume that the testimony in favor of plaintiffs was credible, unless totally incredible on its face, and ignore evidence offered to rebut it. In so discharging our duty to review the evidence in the light most favorable to plaintiffs, we conclude that evidence was presented from which a reasonable jury could find that Uniroyal's articulated reasons were pretextual. In addition to showing that Uniroyal discharged the oldest sales representatives in Region 13 and the one oldest development representative in Region 13/16, and that it apparently did not fully follow its own EEO policy in recognizing seniority when making reductions in force, the plaintiffs presented evidence that the merit rankings of Uniroyal employees were possibly artificial or irrational. Evidence was also presented showing that the plaintiffs performed better against stated standards than did other employees ranked higher.

In connection with Fox, the plaintiffs proved that several documents relating to the rankings of employees were developed within the termination period and in some cases were questionable. For example, a memorandum was developed just two weeks before Fox was fired, which described "exciting new chemicals" that purportedly were not within the expertise of Fox but which were to be marketed by Uniroyal. Other evidence, however, tended to show that Fox was familiar with four of the products contained in the memo. Documents which purported to be the rankings of Fox as of October 3, 1983, and September 25, 1984, which concededly were heavily relied on in making the decision to terminate Fox, turned out to be inaccurate documents prepared for litigation. Uniroyal admitted that they had been copied to remove "extraneous" information. When the trial judge halted the trial to obtain the original documents, the original documents were produced and showed that in fact three other employees were ranked below Fox. All of them were younger than Fox, had less experience, and were retained. Plaintiffs also demonstrated that even though Fox was terminated because he was allegedly a lower performer, he was hired six months later as an independent consultant for Uniroyal, a position he continued to hold at the time of trial.

Duke was purportedly selected for termination because his sales position was eliminated. However, evidence was offered that the document showing the elimination of his territory was accurate for a period of perhaps two weeks, and that after his termination more representatives were servicing his region than before. Moreover, it was shown that by August 16, 1985, the day after he was terminated, Duke had already exceeded his overall 1985 sales goals while operating within expense limits. At the same time, the company's overall performance was lower than planned. Uniroyal representatives also argued that Duke was not sufficiently aggressive, but evidence was offered to show that he in fact doubled the Uniroyal assigned goal for an important product assigned to him and that he had in fact brought in new customers, whereas other sales representatives in the region had brought in none.

The trial was lengthy and the plaintiffs have effectively pointed to other facts to support their position. Considered in the aggregate, the facts presented permit a finding by a reasonable jury that the reasons advanced by Uniroyal were pretextual. Having reached this conclusion, we cannot disturb the verdict of the jury.

## II

Uniroyal challenges several rulings by the district court in admitting evidence. The receipt of one document, in particular, raises a significant question of relevance. Plaintiffs offered, and the court admitted, a one-page Uniroyal newsletter article reporting Uniroyal Chairman Joseph P. Flannery's comments concerning the effects of

a leveraged buy out on a company. While Uniroyal had justified, in part, its reduction in force on the restructuring that followed the leveraged buy out, Uniroyal argues that the statements of Flannery in the article were not relevant and were only prejudicial. Uniroyal points particularly to the following excerpts:

There are, of course, benefits from what has gone on. If you think about world competition a major issue for the U.S. today, the divestment of major units in a leveraged buyout, such as Uniroyal, will surely lead to coupling with similar businesses to make both more competitive in the future. That's good for the business and the employees in those businesses.

On the other hand organizations get ripped apart, staffs eliminated and short-term orientation takes over. Again, each situation is different but this generally happens.

*Shattered Dreams*

I am bothered by what happens to the average employee. Someone expressed it very well—so many shattered dreams. There are people struggling to survive, to provide for families. I suspect they are not represented here. We do have a responsibility to be concerned about them. Certainly they should not be sacrificed for the benefit of a few, whoever we might be.

The management and employees at Uniroyal who had done the turnaround job should have been allowed to go on. They should have been permitted to share in the gains achieved through their sacrifice and hard work.

J.A. 2220.

While we can appreciate the potentially prejudicial effect that this document might have had in distracting jurors from the issues presented for decision, and can even conclude that the better judgment would have been to sustain Uniroyal's objection, in the context of a two and one-half week trial in which over 175 exhibits were admitted and an accumulation of relevant evidence was presented, we find that any error was harmless.

A review of the other rulings made by the district judge on the admissibility of evidence, while at times presenting close questions, does not demonstrate an abuse of the broad discretion given to trial judges in ruling on the evidence.

### III

Uniroyal contends that the district court committed reversible error in denying its motion to sever the plaintiffs' trials. It argues that evidence of discrimination as to one employee would not ordinarily be admissible against another, and therefore to try the two employees together was prejudicial, citing *Weir v. Litton Bionetics, Inc.,* 41 Fair Empl.Prac.Cas. (BNA) 1150, 1986 WL 11608 (D.Md.1986).

Rule 20(a), F.R.Civ.P., provides:

All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.... A plaintiff ... need not be interested in obtaining ... all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief....

Section (b) of the Rule goes on to provide that the court "may order separate trials or make other orders to prevent delay or prejudice." F.R.Civ.P. 20(b).

Both Duke and Fox were terminated on August 15, 1985, as part of the same reduction in force which was implemented by Uniroyal under a uniform policy adopted for selecting employees for discharge. The reduction was implemented by direction of Uniroyal's national sales manager, Bolton Jones, in consultation with its manager of employee relations, Bob Douglas. Moreover, the decisions with respect to both Duke and Fox were the product of coordinated efforts in the selection of persons for discharge and in making transfers necessitated by restructuring of regions and de-

partments. Plaintiffs' claims arise out of the same transaction, a single reduction in force, raising common questions of law and fact.

While there was a broad variation of circumstances relating to the merits of the individual performances of each of the plaintiffs, this evidence could be easily distinguished by the jury. The record presents no basis to conclude that the evidence was confusing or that either plaintiff was prejudiced by the evidence submitted by the other.

Moreover, when instructing the jury, the district court was careful to point out that each plaintiff's claim should be considered separately and should rise or fall on the evidence with respect to that plaintiff:

> Where more than one claim is involved, as in this case, you should consider each claim and the evidence pertaining to it separately, as you would, had each claim been tried before you, separately.
>
> \* \* \* \* \* \*
>
> Remember, you are to consider each plaintiff, Mr. Duke and Fox, individually and separately and find and respond to the issues individually.

J.A. 1925, 1929. The court also described the separate claims of each of the plaintiffs to the jury, and the jury was given a form for returning a verdict which called for a separate finding with respect to each plaintiff.

In these circumstances, we hold that the plaintiffs were properly joined and that the court did not abuse its discretion in denying the motion to sever. *See Person v. Miller*, 854 F.2d 656, 665 (4th Cir.1988) (denial of severance motion is an abuse of discretion only if denial deprives defendant of fair trial), *cert. denied*, 489 U.S. 1011, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989).

### IV

Uniroyal contends that the district court did not adequately inform the jury of the law or the manner in which to apply the facts to the law.

■ Uniroyal is correct in pointing out that we have directed that jury instruc-

tions be drawn so as to relate to the particular factual circumstances of the case. Abstract propositions of law stated to the jury without regard to the factual circumstances are potentially confusing. *See United States v. Holley*, 502 F.2d 273, 276 (4th Cir.1974). On the other hand, district judges are not required to comment on the evidence, and their refusal to single out any particular item of evidence is often a sensible approach to evenhandedness in the presentation of the law. *See Nelson v. Green Ford*, 788 F.2d 205, 208–09 (4th Cir. 1986).

■ The district court's instructions to the jury in this case do not offend these applicable principles. The court described the background of the ADEA, the nature of the claims of the parties, and the law to be applied. Contrary to the contention of Uniroyal, the district court did adapt the law to the case. When the district court's instructions are read as a whole, they fairly describe the law that is applicable to the particular claims of the parties in this case, and they were not presented in such an abstract manner as to confuse.

### V

Uniroyal contends that the district court improperly submitted to the jury the issues of whether front pay is to be awarded and the amount, if any, to be awarded. It contends that front pay is an aspect of the equitable relief to be considered by the court and therefore should not be considered by the jury. The plaintiffs, on the other hand, contend that the Seventh Amendment guarantees to them a trial by jury on any issue for recovery of dollar amounts owing, including back pay, liquidated damages and front pay, because such amounts are in the nature of legal remedies.

The circuits are divided on this issue. The Third, Sixth, and Ninth Circuits have expressly ruled that the quantification of front pay is a legal question which should be submitted to the jury. *See Maxfield v. Sinclair Int'l*, 766 F.2d 788, 796 (3d Cir. 1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct.

796, 88 L.Ed.2d 773 (1986); *Fite v. First Tennessee Prod. Credit Ass'n,* 861 F.2d 884, 893 (6th Cir.1988); *Cassino v. Reichhold Chemicals, Inc.,* 817 F.2d 1338, 1347 (9th Cir.1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 785, 98 L.Ed.2d 870 (1988). On the other hand, the First, Second, Eighth, and Eleventh Circuits have expressly adopted the position that front pay is an equitable remedy, the amount of which should be left for the court to decide. *See Wildman v. Lerner Stores Corp.,* 771 F.2d 605, 616 (1st Cir.1985) (district court has discretion to award front pay when reinstatement is impractical or impossible); *Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1257 (2d Cir.1987) (award of front pay should be made by the court); *Gibson v. Mohawk Rubber Co.,* 695 F.2d 1093, 1100 (8th Cir. 1982) (district court may grant, as equitable relief, monetary damages in lieu of reinstatement); *Ramsey v. Chrysler First, Inc.,* 861 F.2d 1541, 1545 (11th Cir.1988) (award of front pay is equitable relief; district court has discretion whether to grant it and in what form). The Tenth Circuit has not expressly ruled on the issue but it does appear to support the position that the amount of front pay lies in the district court's discretion. *See Spulak v. K Mart Corp.,* 894 F.2d 1150, 1157–58 (10th Cir. 1990) (affirming district court's post-trial award of front pay); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988) (front pay and reinstatement are alternative remedies for making the plaintiff whole). The Fifth and Seventh Circuits have issued conflicting guidance on the issue of whether the judge or the jury should decide the amount of front pay. *Compare Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1470 (5th Cir.) (jury determines amount of front pay), *cert. denied,* —— U.S. ——, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989), *and Coston v. Plitt Theatres, Inc.,* 831 F.2d 1321, 1333 n. 4 (7th Cir.1987) ("authority and reason" suggest that amount of front pay is a jury question), *vacated on other grounds,* 486 U.S. 1020, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988), *with Deloach v. Delchamps, Inc.,* 897 F.2d 815, 824 (5th Cir.1990) (front pay

is equitable remedy and amount is within district court's discretion), *and Graefenhain v. Pabst Brewing Co.,* 870 F.2d 1198, 1206 (7th Cir.1989) ("we need not address the difficult question"). The Fourth Circuit has not addressed the issue.

The ADEA was enacted in 1967 to promote the employment of older persons based on their ability rather than their age and to prohibit arbitrary age discrimination in employment. 29 U.S.C. § 621(b). Remedies for violation of the Act are provided in Section 626(b) which provides in part:

In any action brought to enforce this chapter the court shall have jurisdiction to grant such *legal or equitable relief as may be appropriate to effectuate the purposes of this chapter,* including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

(Emphasis added.) Although front pay is not expressly enumerated, the Act permits a range of equitable and legal remedies to give effect to its purposes. The right to trial by jury is preserved on legal issues. 29 U.S.C. § 626(c)(2). When both legal and equitable remedies are demanded, the appropriate method of proceeding requires submission of the case first to the jury to resolve liability and all legal damages. Thereafter, the court conducts a trial in equity to resolve all issues of equitable relief. *See Ross v. Bernhard,* 396 U.S. 531, 537–38, 90 S.Ct. 733, 737–38, 24 L.Ed.2d 729 (1970) ("[W]here equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed...."); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) ("[O]nly under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims.").

In this case Duke and Fox have requested both legal and equitable remedies, including, among other things, reinstate-

ment, compensation for loss of back pay and benefits, loss of future pay and benefits until retirement, and liquidated damages for willful violations. The district court, determining that front pay was a legal issue, submitted the question of whether it is to be awarded and in what amount to the jury. In addition to awarding Duke and Fox back pay, the jury made separate awards of front pay for anticipated lost income and benefits from the date of trial until retirement.

Future wages are often determined with reasonable certainty and awarded as legal damages in circumstances where the earning capacity of a plaintiff is destroyed or damaged. In circumstances, however, where employment is terminated without destroying the capacity to work, the nature and extent of injury is nearly indeterminable. The broad array of potential circumstances of a terminated employee's future income makes any attempt at finding damages a speculative venture. The question of whether the discharged employee will ever work again despite his best efforts or will obtain gainful employment in two years, or immediately, is not something that is within the realm of fact finding. To have a jury thus compute a number without regard to reasonably certain predictions of actual injury is foreign to established principles of legal damages.

The appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial for the purpose of tailoring a blend of remedies that is most likely to make the plaintiff whole. The beginning point under the ADEA for preventing future loss is reinstatement. *See, e.g., Maxfield*, 766 F.2d at 796.

While an employer-employee relationship may not be fully restored to its pre-violation condition by reinstatement, the chances of a proper restoration are greater than by guessing, with an award of front pay, whether and for how long a plaintiff will work in the future. Under one scenario of future events, the plaintiff could be left without a remedy and under another the plaintiff could end up with a windfall. In either case, an injustice is done to one party or the other.

It is axiomatic, however, that notwithstanding the desirability of reinstatement, intervening historical circumstances can make it impossible or inappropriate. For example, reinstatement has not been ordered when the employer has demonstrated "such extreme hostility that, as a practical matter, a productive and amicable working relationship would be impossible." *EEOC v. Prudential Fed. Sav. & Loan Ass'n*, 763 F.2d 1166, 1172 (10th Cir.), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985). Reinstatement has also been found inappropriate when the litigation itself created such animosity between the parties that any potential employer-employee relationship was irreparably damaged; or when the company was no longer in business; or when the particular business for which the plaintiff was qualified was no longer operating; or when there was no comparable position available. *See Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 728 (2d Cir.1984). Also, when the period for reinstatement was expected to be a relatively short one, such as if the plaintiff was close to retirement, the strong preference in favor of reinstatement has been found to be neutralized by the increased certainty of the potential loss of pay, permitting consideration of a front pay award. *See e.g., McNeil v. Economics Laboratory, Inc.*, 800 F.2d 111, 118 (7th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). Combinations of the factual circumstances noted could lead to awards for temporary periods of front pay, such as a time for retraining the employee if that course is the one more suited to making him or her whole.

When reinstatement is not appropriate, then other remedies may be considered. We join virtually all circuits that have considered the subject in concluding that front pay is an available remedy to complete the panoply of remedies available to avoid the potential of future loss. *E.g., Wildman*, 771 F.2d at 616 (1st Cir.);

*Whittlesey,* 742 F.2d at 728 (2d Cir.); *Maxfield,* 766 F.2d at 796 (3d Cir.); *Hansard,* 865 F.2d at 1469 (5th Cir.); *Davis v. Combustion Eng'g, Inc.,* 742 F.2d 916, 923 (6th Cir.1984); *McNeil,* 800 F.2d at 118 (7th Cir.); *Gibson,* 695 F.2d at 1100 (8th Cir.); *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1319 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982); *EEOC v. Prudential Fed.,* 763 F.2d at 1172–73 (10th Cir.); *Goldstein v. Manhattan Indus., Inc.,* 758 F.2d 1435, 1448–49 (11th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985); *cf. Taylor v. Home Ins. Co.,* 777 F.2d 849, 860 (4th Cir.1985) (affirming district court award that included front pay), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

The question of who should determine the amount of front pay to be awarded—the jury or the trial judge—rests on whether front pay is a legal or equitable remedy. Traditionally, money damages were a "form of relief offered in the courts of law." *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974). Money damages, however, are not always legal in nature; a money damages award may be a form of equitable relief if it is "restitutionary" or "incidental to or intertwined with injunctive relief." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 110 S.Ct. 1339, 1348, 108 L.Ed.2d 519 (1990) (citations omitted). For example, in cases brought under Title VII of the Civil Rights Act of 1964, back pay has been characterized by the courts of appeal as "an integral part of an equitable remedy, a form of restitution." *Curtis,* 415 U.S. at 197, 94 S.Ct. at 1010. The characterization is based "on the fact that the decision of whether to award backpay is committed to the discretion of the trial judge." *Id.* In addition, there is a sense that back pay is the method by which the defendant is required to "disgorge funds wrongfully withheld from the plaintiff." *Id.*

Similarly, whether front pay is to be made available to a plaintiff under the ADEA is a matter left to the discretion of the trial judge who must consider a host of factors, including whether reinstatement is practical. While reinstatement, which is clearly an equitable remedy, is the much preferred remedy, front pay may serve as a substitute or a complement. Because of the potential for windfall, however, its use must be tempered. It can be awarded to complement a deferred order of reinstatement or to bridge a time when the court concludes the plaintiff is reasonably likely to obtain other employment. If a plaintiff is close to retirement, front pay may be the only practical approach. The infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages. Its award, as an adjunct or an alternative to reinstatement, must rest in the discretion of the court in shaping the appropriate remedy. Thus, as with back pay under Title VII, front pay under the ADEA has a restitutionary nature. We conclude therefore that its award and amount is one for the court sitting in equity to consider and not the jury.

In submitting that issue to the jury in this case, the district court permitted awards which did not take into account the discretion, restraint and balance that a court of equity could bring to bear in considering the variations of application. Accordingly, we vacate that part of the jury verdict which is attributable to front pay with the instructions that the district court conduct an equitable hearing to determine, in accordance with the principles outlined in this opinion, whether front pay should be awarded and if so in what amount.

Fox contends also that the court improperly denied him reinstatement and refused to afford him a hearing for purposes of determining whether reinstatement was appropriate. Because we are directing that an equitable hearing take place and reinstatement is the much preferred remedy for addressing potential future losses which should be considered in tandem with other potential equitable remedies as described herein, our remand order includes the order for the court to reconsider the total equitable remedies available to Fox,

including the possibilities of reinstatement, front pay, a combination, or, if appropriate, no remedy.

In remanding this case for an equity trial to determine the appropriate equitable relief, if any, we do not disturb the jury verdict except insofar as we vacate its awards of front pay, which were separately stated.

## VI

■■■ In their petition for attorneys' fees and costs, Duke and Fox originally claimed fees incurred for the conduct of the trial in the amount of $531,465.70 and costs of $24,700.98. They later submitted claims for additional fees incurred in prosecuting the fee petition in the amount of $75,235 and costs of $3,193.68. The fees sought included a contingency enhancement. After reviewing the voluminous submissions by the parties and conducting a hearing, the district court awarded plaintiffs $240,-960.25 in attorneys' fees, plus $21,447.88 in costs, incurred in connection with the trial and $34,050 in fees, plus $1,672.68 in costs, incurred in prosecuting the fee petition.

Uniroyal contends that the award was improperly determined by the district court because the descriptions of time entries supplied by plaintiffs were too generalized, and the court used a method of reducing fees across the board without a sufficiently detailed analysis.

In its opinion in support of its award of attorneys' fees, the district court concluded that it had been presented with "adequate documentation" of the time incurred by counsel for the plaintiffs. It noted that counsel for Uniroyal "have represented to the court that they do not contest the reasonableness of the total number of hours that plaintiffs' attorneys spent on the case." J.A. 812. The parties focused on whether the time incurred with respect to claims which were dismissed by summary judgment and settled before trial should cause a reduction and whether the hourly rates of plaintiffs should be enhanced. Addressing these issues, the court stated:

> [A]fter a review of the timesheets the court finds that a 25% reduction in Stage

I [the period from the beginning of the litigation through its summary judgment phase] adequately estimates the time spent on non-prevailing plaintiffs and on the wrongful-discharge claims of the prevailing plaintiffs.

> The court finds that a 25% reduction in Stage III [the post-trial motions phase] time is necessary to account for the unsuccessful, post-trial reinstatement/additur motion of Fox and the unsuccessful motions for reconsideration of Bishop and Barden. Time spent on these motions was not related to the success of Fox and Duke in their ADEA claims and is not compensable.

J.A. 814. The district court noted that even though only two of the four plaintiffs were prevailing parties, a direct prorated reduction of 50% would not be appropriate because "it would not be accurate to say that the plaintiffs could have prosecuted the claims of Duke and Fox with only half the labor that they expended in prosecuting the claims of Duke, Fox, Bishop, and Barden." *Id.* The analysis of the district court was well-reasoned and was based not only on its review of the vast volume of data submitted by counsel but also on its own intimate familiarity with the case and on the concessions made by counsel during the attorneys' fee petition phase. The district court was not clearly erroneous in its findings.

The district court also adjusted downward the hourly rates of counsel for the plaintiffs to bring them in line with the relevant market rates in the community. It refused to enhance further the attorneys' fees claim of plaintiffs on grounds of exceptional success and refused a further downward reduction urged by Uniroyal on the basis that documentation was inadequate and that the success was not total. The court's analysis on these issues was thorough and thoughtful, and we find no abuse of discretion. Accordingly, the award of attorneys' fees is affirmed.

## VII

In summary, we reject all challenges to the jury phase of trial and affirm the ver-

1426

dict of the jury except insofar as the jury awarded front pay. We affirm the award of attorneys' fees. We vacate the awards of front pay and the district court's order denying Fox reinstatement and remand the case to the district court to conduct an equity trial to determine the appropriate equitable remedies, if any, for all parties in accordance with the principles set forth in this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH IN-STRUCTIONS.