14 F.3d 594
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Lena FORD, Plaintiff-Appellee,
v.
COMMUNITY CASH STORES, INCORPORATED, Defendant-Appellant.
 No. 93-1217.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Decided Jan. 24, 1994.
 
 Appeal from the United States District Court for the District of South Carolina, at Spartanburg. William B. Traxler, Jr., District Judge. (CA-91-1133-7-21-K)
 Thomas Allen Bright, Haynsworth, Baldwin, Johnson & Greaves, P.A., Greenville, SC, for appellant.
 Joseph Kenneth Maddox, Jr., Spartanburg, SC, for appellee.
 Andreas Neal Satterfield, Jr., Haynsworth, Baldwin, Johnson & Greaves, P.A., Greenville, SC, for appellant.
 S.D.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 Community Cash Stores, Inc. (Community Cash) appeals from a judgment against it on a jury verdict awarding compensatory and liquidated damages to a former employee, Lena Ford, who the jury found had been fired in violation of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. Sec. 621 et seq. Community Cash challenges the sufficiency of the evidence to support the jury's verdict, including its award of liquidated damages, the award of front pay as a remedy, and the award of attorney fees. We affirm.
 
 
 2
 * Lena Ford was hired in 1963 by Community Cash, a South Carolina regional grocery supermarket chain, to work as a part-time cashier in one of its stores. Soon afterward she was promoted to full-time cashier and worked uninterruptedly in that position at several of the company's stores for over twenty-seven years until she was discharged from her employment at a Spartanburg store in August, 1990, at age 61. During that period she had a generally excellent work record and was a respected employee. A member of the store's management fired her in 1990, citing as the reason a series of recent events involving Ford's work that warranted the action.
 
 
 3
 Ford then brought this action against Community Cash, alleging a claim under the ADEA for allegedly discharging her because of her age, and three pendent state-law claims for defamation, wrongful discharge and breach of implied employment contract. The state-law claims were dismissed by summary judgment and directed verdict, and only the ADEA claim was submitted to the jury. It found Community Cash liable, and the store's violation of the ADEA willful. On that basis, the district court, following denial of the store's motion for judgment n.o.v. or alternatively for a new trial, entered judgment awarding compensatory damages in the form of back and front pay, liquidated damages, and attorney fees.
 
 
 4
 This appeal followed.
 
 II
 
 5
 Though Community Cash as appellant identifies a total of nine issues, seven are simply sub-issues of the general issues of the sufficiency of the evidence to support the jury's finding of a violation of the ADEA and that the violation was willful, entitling Ford to liquidated damages under the Act. The two other issues relate to the award of front pay rather than reinstatement, and to the award of attorney fees. We take these in order.
 
 
 6
 * We first address the sufficiency of the evidence to support the jury's verdict of basic liability.
 
 
 7
 As earlier noted, this case developed in the classic pattern of the typical ADEA action: a former long-time employee claims that her employer fired her because of her age; the employer denies this and asserts it was because of the employee's derelictions of duty, to which, in rebuttal, the employee asserts that the alleged derelictions were demonstrably pretextual, simply post-hoc contrivances to cover up age as the real reason. The evidence advanced in support of these positions can be summarized as follows.
 
 
 8
 In addition to the basic facts of her long-time employment to the evident satisfaction of her employer until she was fired at age 61, Ford introduced her personnel files which until shortly before her firing contained only positive ratings and comments. For example, in an appraisal dated September 25, 1989, a superior had noted that Ford "[d]oes a good job--looks out for the company," and in February 1990, just five months before the firing, the store manager had recommended her for a pay raise as "a reward for a quality cashier."
 
 
 9
 Additionally, Ford presented evidence that within a 12-day period (July 23-August 3, 1990) four longtime employees--herself, age 61, a Mr. Estes, age 42, a Mr. Waddell, age 56, and a Mrs. O'Shields, age 63--were either fired or left under circumstances suggesting that their resignations were coerced. A month earlier, a fifth employee, Mrs. Scruggs, age 52, had also left employment.
 
 
 10
 Finally, Ford introduced in evidence the deposition testimony of Community Cash's personnel director in which, responding to a direct question as to the reason for her firing, he responded, "I just didn't feel like she no longer fit into our plans at Community Cash." And when asked to describe those plans, he responded,"Plans for future growth, plans for being a viable employee."
 
 
 11
 Community Cash in turn offered evidence of three instances of derelictions by Ford in the performance of her duties which it asserted were the actual reason--unrelated to her age--for her firing.
 
 
 12
 The first involved a perception by store management that Ford had been accepting an above-average number of discount coupons. This was brought to her attention in July of 1990, the month before her firing, by Lee Collins, then a new manager at Ford's store, who instructed her to correct this practice.
 
 
 13
 The second involved her telling customers, in responding to their inquiries about the departure of other employees, that it was her understanding that they had been fired. This conduct was questioned by Collins about a week after the coupon conversation, at which time Collins directed Ford and another employee to refer all inquiries about departed employees to him.
 
 
 14
 The third involved a convoluted transaction in late July of 1990 in which Ford, at a customer's behest, allegedly violated store policy by manually entering the price of a ham as reported to her by the customer rather than by physically "scanning" it through the electronic pricer at her register. This incident led directly to her firing. When reported to Collins, he in turn reported it to Mark West, the personnel director. At West's direction, Collins suspended Ford, and about a week later West wrote Ford a letter informing her that "[t]he outcome of the investigation into your suspension is that the procedure for making a proper transaction at the cash register was not followed correctly. Therefore, your employment with Community Cash is terminated effective August 6, 1990."
 
 
 15
 In rebuttal, Ford offered evidence designed to question the credibility of these proffered reasons for her discharge. This included evidence that although all three incidents were advanced as cumulative reasons for her firing, she was never formally disciplined for either of the first two; testimony that store management could never identify the specific policy or procedure allegedly violated in the ham incident; and the fact that written company policy admonished cashiers to do exactly what Ford did in yielding to the ham customer's entreaties by not "argu[ing] or match[ing] wits with" her.
 
 B
 
 16
 The question for us is whether on this state of the record, the evidence sufficed to withstand Community Cash's preand post-verdict motions for judgment as a matter of law or, in the alternative, for a new trial.
 
 
 17
 In making this inquiry, we assess the evidence in the light most favorable to Ford, accepting its credibility, resolving inconsistencies in her favor, and giving her the benefit of all favorable inferences. Herold v. Hajoca Corp., 864 F.2d 317, 319 (4th Cir.1988). In this age discrimination case, the specific issue is whether, applying that standard, the evidence sufficed to support a finding--as made by the jury here--that "but for" Ford's age Community Cash would not have fired her, Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 233 (4th Cir.1991), or as alternatively expressed, that" age was a determining factor" in the decision to fire her. Wilhelm v. Blue Bell, Inc., 773 F.2d 1429, 1432 (4th Cir.1985).
 
 
 18
 The evidence here easily passes that test. Whether assessed under the highly favorable McDonnell-Douglas proof scheme as adapted to age discrimination cases, see Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir.1982), or even as unaided by that scheme's special design, a jury rationally could have inferred from this evidence, assessed in its most favorable light to Ford, that Ford's age was a determining factor in her firing. Specifically, the evidence of Ford's long period of exemplary service, that had earned positive evaluations down into the last six months of her employment, considered in conjunction with the evidence of the recent departure in rapid order of four other employees within the protected age group, coupled with the personnel director's allusion to the company's current plans for "viable" employees, into which Ford did not fit, sufficed to support, though surely not to compel, the inference that Ford's termination was simply part of a general design on the part of new store management to terminate some of its older employees in order to replace them with more "viable" ones. Similarly, Ford's evidence challenging the credibility of management's purported reasons for firing her sufficed to support, through surely not to compel, the jury's rejection of those reasons. Specifically, the evidence that two of the asserted derelictions did not, when they occurred, result in any formal disciplinary action, as company policy required if they were to constitute formal black marks, coupled with evidence that the final "ham" incident violated no formal company policy, sufficed to support a rational jury inference that the reasons advanced were post-hoc pretexts.
 
 
 19
 In sum, the evidence on the decisive issue of this employer's motive--its real reason--for firing Ford was, as it is in many age discrimination cases, in substantial conflict. From it a jury could well have found against Ford, crediting the employer's version as a credible one. Despite Ford's long period of apparently exemplary service and the seeming precipitousness of her rapid descent into ultimate disfavor with her employer, the jury might nevertheless have accepted Community Cash's theory of defense: that it was engaged in no general "youth movement" of which Ford was a victim, as revealed by its evidence of the ages at which during the critical period it was hiring and firing other employees; and that Ford's derelictions were serious ones, perhaps too long overlooked, which warranted discharge and for which other employees had in fact been discharged. The jury could well have found so, but it did not, instead finding, as rationally it could find from the same body of evidence, in Ford's favor, rejecting the employer's version and inferring Ford's age as a determining cause of her firing. Because the evidence supported this finding as a rational one, we must defer to the jury verdict based upon it. Herold, 864 F.2d at 319. Our review is only for legal sufficiency; not for factual error.
 
 
 20
 The district court's denial of the alternative motion for a new trial on the grounds that the verdict of liability was against the weight of the evidence was a ruling committed to its discretion, reviewable only for clear abuse. See Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350, 354 (4th Cir.1941). Though, as earlier noted, the evidence here was in substantial conflict, we cannot find any such abuse in the district court's refusal to set aside the jury's verdict.
 
 C
 
 21
 We next consider Community Cash's challenge to the sufficiency of the evidence to support the jury's determination that the company's violation of the ADEA was "willful" thereby warranting the award of liquidated damages under Sec. 7(b) of the ADEA, 29 U.S.C. Sec. 626(b).
 
 
 22
 Decision on this point is controlled by the Supreme Court's decision last term in Hazen Paper Co. v. Biggins, 113 S.Ct. 1701 (1993). In that case the court, revisiting the issue of the meaning of "willful" in the ADEA context, distinguished between the employer who "incorrectly but in good faith and nonrecklessly believes that the statute [ADEA] permits a particular age-based decision" and the employer who pretends that a decision was not age-based when in fact it was. Id. at 1709. Although the employer in the first instance may be in violation of the ADEA, such a violation is not "willful" so that liquidated damages should not be imposed. However, in the second instance, where age is "an undisclosed factor motivating the employer", id., a "willful" finding is appropriate. As the Court noted, "[i]t would be a wholly circular and self-defeating interpretation of the ADEA to hold that, in cases where an employer more likely knows its conduct to be illegal, knowledge alone does not suffice for liquidated damages." Id. at 1710.
 
 
 23
 In Hazen, as here, the employer had denied that age was a factor in their decision to fire the plaintiff-employee. In both cases, the jury disagreed, finding instead that age was a determinative factor and that the ADEA violation was "willful." The Supreme Court upheld the jury's determination in Hazen, and on Hazen's authority we do so here as well.
 
 III
 
 24
 We consider finally Community Cash's challenges to the district court's award of $17,000 in front-pay rather than ordering reinstatement as an appropriate forward-looking remedy for the violation found, and to the court's award of $21,000 in attorney's fees to Ford.
 
 
 25
 * Though reinstatement rather than monetary relief in the form of front-pay is the preferred forward-looking remedy for firings in violation of the ADEA, Duke v. Uniroyal, Inc., 928 F.2d 1413, 1424 (4th Cir.1991), "intervening historical circumstances can make [reinstatement] impossible or inappropriate." Id. at 1423. Recognizing this, the district court found such "intervening circumstances" here--specifically, in the lapse of time since the firing, the likelihood of animosity between Ford and some fellow-employees who testified against her, and Ford's advanced age--and on that basis awarded front-pay as the appropriate remedy. The factual findings upon which this determination was based are perfectly plausible ones on the evidence before the district court, hence must be upheld as not clearly erroneous, and the award based upon them must therefore be affirmed.
 
 B
 
 26
 The award of $21,000 in attorney's fees is vigorously challenged by Community Cash as not supported by an adequate record of time reasonably spent upon issues as to which Ford finally prevailed. We have carefully considered this contention, and the relevant portions of the record, and are not prepared to find an abuse of discretion in the district court's award. The setting of appropriate attorney's fees is a matter in the end of judgment which is rightly committed to the trial court's discretion. We review its final award with great deference--finding abuse only where manifest factual or legal misapprehension has tainted the ultimate exercise of discretion. We cannot find that here. The court properly applied the legal criteria set out in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 (4th Cir.1978), and took steps to correct what it perceived to be an overstatement of time expended on matters as to which Ford did not prevail. Community Cash protests that the correction approved was inadequate, but we think it lay within the bounds of fair judgment by the trial judge.
 
 
 27
 AFFIRMED.