23 F.3d 401
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Blanca L. ITURBE; Angel Iturbe, Plaintiffs-Appellants,
v.
WANDEL & GOLTERMAN TECHNOLOGIES, INCORPORATED, Defendant-Appellee.
 No. 93-1654.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 6, 1993.
Decided: April 4, 1994.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, Sr., District Judge. (CA-90-242)
 ARGUED: Stewart Wayne Fisher, Glenn, Mills & Fischer P.A., Durham, NC, for Appellants.
 William L. London, III, Moore & Van Allen, Durham, NC, for Appellee.
 ON BRIEF: Davis A. Harlow, Rita M.K. Purut, Moore & Van Allen, Durham, NC, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before PHILLIPS and WILKINS, Circuit Judges, and KEELEY, United States District Judge for the Northern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Blanca and Angel Iturbe appeal the order of the district court granting defendant Wandel & Golterman Technologies, Inc.'s ("W & G") motion for summary judgment and dismissing the Iturbes' discrimination claims brought pursuant to Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000(e), et seq., and North Carolina law. Finding no error, we affirm.
 
 I.
 
 2
 Blanca Iturbe is a white woman born in Chile of German and Spanish descent. She is a naturalized citizen of the United States. Her husband and co-plaintiff, Angel Iturbe, is a white Chilean of German and French descent and a permanent resident alien of the United States.
 
 
 3
 W & G is a North Carolina corporation which manufactures electronic measurement instruments. Blanca Iturbe was hired by W & G in 1981 to work in its New Jersey plant. When W & G relocated to Durham, North Carolina in 1983, Blanca Iturbe accepted W & G's offer to move with the company. Concerned that her husband, Angel Iturbe, might not be able to find work in North Carolina, she approached Uwe Beckmann, W & G's vice-president in charge of manufacturing, on his behalf. Beckmann interviewed Angel Iturbe, and hired him to begin work with W & G as a machinist on December 10, 1984.
 
 
 4
 W & G's machine shop manufactures tools and other material incident to the manufacture of electronic measurement instruments. In September 1985, W & G hired another machinist, Manfred Kraeuter, a German national, with 25 years of experience as a machinist and toolmaker. Kraeuter's salary was $12.00 per hour which was less than he had made in his prior jobs. At the time Kraeuter was hired, Angel Iturbe had worked at W & G for nine months and received a salary of $11.10 per hour. According to their employee performance reviews as of that date, the wage differential between Iturbe and Kraeuter was attributable to their respective skills.
 
 
 5
 In June 1987, W & G hired a white American machinist, Theodore Gunter, at $11.00 per hour. At that time, as a more experienced employee, Angel Iturbe received $11.80 per hour. Both employees were given raises as they received favorable performance reviews.[1]
 
 
 6
 Blanca Iturbe worked as an electronic assembler in the manufacturing division of W & G. She began work in the pre-assembly area where Karin Hollinghurst, the assembly group leader at the time, supervised her. According to Blanca Iturbe, she and Hollinghurst developed a severe personality conflict. W & G eventually shifted Blanca Iturbe to final assembly. Following the move to W & G's North Carolina facility, Karin Hollinghurst became the head of the assembly department.
 
 
 7
 In February 1989, due to a surplus of inventory resulting from declining sales, W & G decided to cut costs and production by reducing the work force in its manufacturing division. The greatest reduction occurred in the assembly department. As vice-president of manufacturing, Uwe Beckmann was responsible for reducing the work force in the manufacturing division. In the course of evaluating which employees were most valuable to W & G, he consulted with Karin Hollinghurst to determine who should be terminated in the assembly department.
 
 
 8
 Although she was not her immediate supervisor, Hollinghurst recommended that Blanca Iturbe, along with others, be terminated. Hollinghurst advanced three reasons to support her recommendation. First, Iturbe was frequently absent or tardy due to personal or family health problems. As a result, Hollinghurst felt W & G could not rely on her presence. Second, although Mrs. Iturbe's work product was good, her output was low. She frequently talked with other workers on the assembly floor, slowing the flow of products. Third, although Mrs. Iturbe received pay increases comparable to other assembly workers, she was chronically dissatisfied with the amount of that increase.
 
 
 9
 After reviewing this recommendation, Beckmann contacted Angel Iturbe. Beckmann claims he knew the Iturbes were married and were planning to purchase a house, and that Mr. Iturbe had taken on a second machinist job. On February 23, 1989, Beckmann advised Mr. Iturbe that there was going to be a reduction in work force at W & G and that the greatest cuts would take place in the assembly department. Beckmann also told him that he was considering terminating Blanca Iturbe.
 
 
 10
 Beckmann asked Angel Iturbe if he could work full time at his other job, implying that, if he could, W & G would terminate him and retain his wife out of consideration for the family's needs. Angel Iturbe indicated that he could not obtain full-time employment with his other employer.[2]
 
 
 11
 On February 27, 1989, W & G permanently dismissed Blanca Iturbe and then transferred Angel Iturbe and another machinist, Theodore Gunter, to the assembly department within the manufacturing division. W & G asserts that it did not discharge these men because machinists are highly skilled workers who are difficult to replace. Given the inventory surplus and reduced output of the manufacturing division, W & G did not have sufficient machine shop work to keep them occupied. Later, when the manufacturing work load increased, first Gunter, and then Angel Iturbe, returned to the machine shop. While he was in final assembly, Angel Iturbe retained his higher salary as a machinist. His raise during this period, however, was less than that of the other machinists.
 
 
 12
 Blanca Iturbe filed a charge of discriminatory discharge based upon sex and national origin with the EEOC on August 8, 1989. Angel Iturbe filed a charge of discrimination based on national origin with the EEOC on March 8, 1990, alleging that he was transferred in retaliation for his wife's conduct. This suit followed.
 
 II.
 
 13
 Summary judgment is appropriate when there is no genuine issue of material fact that could lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the nonmovant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir.1990)(citing Anderson, 477 U.S. at 255). The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another. Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). We review de novo the decision of the district court to grant summary judgment. Higgins v. E. I. Du Pont De Nemours & Co., 863 F.2d 1162, 1167 (4th Cir.1988).
 
 III.
 
 14
 The district court found that Blanca Iturbe had established a prima facie case of discrimination based on sex and nationality under the scheme of proof originally applied to Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Tuck v. Henkel Corp., 973 F.2d 371, 374-75 (4th Cir.1992).[3] On appeal, she concedes that W & G has articulated a legitimate, non-discriminatory reason for her dismissal--a reduction in work force brought about by slow sales and excessive inventory. W & G also claims that job performance provided another legitimate reason for Blanca Iturbe's termination.
 
 
 15
 Under the McDonnell Douglas scheme of proof, W & G has met its burden of production and rebutted the presumption of discrimination created by the plaintiff's prima facie case. Blanca Iturbe argues, however, that the record below contained enough circumstantial evidence to create a genuine issue of material fact on the issue of pretext, and also on the ultimate issue of discriminatory intent. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2748-49 (1993).
 
 
 16
 Although she concedes that W & G needed to reduce its work force, Iturbe asserts that Uwe Beckmann fired her because she was a female and Chilean. Evidence of this is circumstantial and, even when viewed in the light most favorable to Blanca Iturbe, we conclude that it could not establish that W & G's reasons for terminating her employment were pretextual, let alone discriminatory.
 
 
 17
 Blanca Iturbe further argues that W & G has not shown that it needed to cut labor in the final assembly area. She points to the fact that after she and a co-worker, a woman of Indian descent, were terminated her husband and Theodore Gunter were temporarily shifted from the machine shop to final assembly. She also places significance on the fact that a third co-worker in her department, a white, American male named Jimmy Hawkins, was retained by Beckmann. As further evidence of discrimination, she cites the fact that Angel Iturbe retained a machinist's higher salary and benefits after his transfer.
 
 
 18
 W & G maintains that its machine shop workload was exhausted and that it transferred Angel Iturbe and Theodore Gunter to final assembly in order to retain their skills. Blanca Iturbe has produced no evidence to challenge this position. Rather, she urges us to infer from a limited statistical analysis of three employees that W & G based its decision to terminate the two women in final assembly on their sex. We decline to do this. The district court correctly found that a court cannot properly draw an inference of discrimination from a pool of only three employees. See McAlester v. United Air Lines, Inc., 851 F.2d 1249, 1258 (10th Cir.1988); and Simpson v. Midland-Ross Corp., 823 F.2d 937, 943 (6th Cir.1987) (small sample of seventeen in age discrimination case was suspect where plaintiff presented no other statistics against which to compare it).
 
 
 19
 The second non-discriminatory reason advanced by W & G for Blanca Iturbe's termination is her performance record compared to that of the retained employee, Jimmy Hawkins. Blanca Iturbe had seniority at W & G. In a reduction-in-force case, selection criteria may shift to factors other than performance, such as seniority. Duke v. Uniroyal, 928 F.2d at 1417-18. Where it remains based on performance, however, "the criteria is more a question of relevant performance than one of not meeting employer expectations." Id. at 1418. W & G's criteria for its reduction in force was relative performance. Based on employment review records and Karen Hollinghurst's recommendations, Beckmann had ample reason to find that, relative to Jimmy Hawkins, Blanca Iturbe's performance was impaired by excessive absenteeism, lower productivity, a tendency to socialize at work and a poor attitude.
 
 
 20
 Blanca Iturbe argues that Beckmann should not have relied on Hollinghurst's evaluation because Hollinghurst not only disliked Iturbe but also did not personally evaluate her work performance. The district court, however, found nothing in Beckmann's evaluation method that suggested a discriminatory intent based on sex or national origin. We agree. A personal animus between a supervisor and employee is not indicative of racial animus. See, e.g., Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). Moreover, Blanca Iturbe's immediate supervisor who evaluated her work performance at the time she was fired noted her poor productivity and "excessive absenteeism." J.A. at 239.
 
 
 21
 Blanca Iturbe's remaining evidence of intentional discrimination includes conclusory allegations that W & G did not promote women in a satisfactory manner, and anecdotal evidence of disparaging comments about the Iturbes' Chilean origin made by co-workers in New Jersey. In our opinion these statements are not probative of intentional discrimination. First, they were made more than five years before Blanca Iturbe's termination. Second, they have not been attributed to Uwe Beckmann, the decision-maker whose intent is at issue here.
 
 
 22
 Angel Iturbe also claims that Beckmann once criticized a tool he made, but later praised it when a German worker used it. This evidence is not sufficiently probative of a discriminatory intent against Chileans to create a genuine issue of material fact.
 
 
 23
 Blanca Iturbe's attempt to infer a discriminatory intent from the discussion between her husband and Uwe Beckmann concerning which of the Iturbes would be terminated is unconvincing. Based on the fact that W & G had to reduce its labor force, that the final assembly area was targeted for a reduction and that her department head gave her an unfavorable recommendation, we conclude that there is no evidence of discriminatory intent sufficient to create a genuine issue of material fact and affirm the district court's grant of summary judgment dismissing Blanca Iturbe's Title VII claims.
 
 IV.
 
 24
 Blanca Iturbe also appeals the dismissal of her state law claim that W & G violated North Carolina's stated public policy protecting employees from discrimination. See N.C.G.S.Sec. 143422.2 et seq. North Carolina recognizes a public policy exception to its employment-at-will doctrine for cases of discrimination. Amos v. Oakdale Knitting, Co., 331 N.C. 348, 416 S.E.2d 166 (1992).[4] Having found, as a matter of law, that W & G did not dismiss Blanca Iturbe on the basis of her sex or national origin, this contention is meritless.
 
 V.
 
 25
 Angel Iturbe appeals the district court's grant of summary judgment on his Title VII claims of discriminatory compensation and retaliatory transfer. To establish a prima facie case of discriminatory compensation an employee must prove that he was a member of a protected class under Title VII and was paid a lesser salary than another employee who is not a member of a protected class. He also must establish that the work was substantially equal in degree of skill, effort, and responsibility and was performed under similar conditions. See Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1456 (9th Cir.1985), cert. denied, 475 U.S. 1048 (1986).
 
 
 26
 Although Angel Iturbe is a member of a protected class, the district court found that Manfred Kraeuter, his fellow machinist, started at a higher rate of pay based on experience and job performance. Angel Iturbe's personal belief that he was as skilled and experienced a machinist as Kraeuter was contradicted by a specific and documented employment record.
 
 
 27
 The district court also found that Angel Iturbe failed to establish, by a preponderance of the evidence, a prima facie case of compensation discrimination relative to Theodore Gunter. Both Gunter and Iturbe transferred to assembly at the same time. Gunter was transferred back to the machine shop two months earlier than Iturbe. As a result, Gunter made two cents more an hour than Iturbe for two months. At the same time, Iturbe made more than an assembler and received a substantial 27 cent raise, which Gunter did not receive, when he was transferred back to the machine shop. In our opinion these facts fall far short of demonstrating that Angel Iturbe received less pay for the same work; if they demonstrate anything, it is that Angel Iturbe was paid more than an assembler for the same work.
 
 
 28
 We also conclude that Angel Iturbe's opinion that he was a better worker than either of his co-workers, without more, does not create a genuine issue of fact regarding whether W & G intentionally discriminated against him because of his nationality.
 
 
 29
 Turning to Angel Iturbe's appeal of the district court's dismissal of his claim for retaliatory transfer, the complaint alleges that W & G transferred Iturbe to his wife's position in retaliation for her discrimination claim. The sequence of proof and burden shifting outlined in McDonnell Douglas, 411 U.S. at 802-05, apply to retaliation cases under Sec. 704(a) of Title VII. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir.1985).[5]
 
 
 30
 Applying that analysis here, Angel Iturbe's claim of retaliation misses the mark because he cannot show a causal connection between the filing of Blanca Iturbe's EEOC claim and his transfer to assembly. It is undisputed that W & G transferred him prior to the filing of his wife's claim. Although the employer's knowledge that the protected activity had taken place is not an element of the prima facie case, "it is necessarily subsumed in the requirement of a causal connection, for if the employer did not know of the protected activity, a causal connection to the adverse action cannot be established." Ross v. Communications Satellite Corp., 759 F.2d at n. 9. The district court's conclusion that Angel Iturbe was not transferred on the basis of his race or in retaliation for his wife's prosecution of her EEOC claim is manifestly supported by the evidence.
 
 
 31
 Accordingly, we affirm the holding of the district court dismissing Angel Iturbe's claim for retaliatory transfer.
 
 
 
 [1]
 Iturbe continues to be paid more than Gunter
 
 
 [2]
 Angel Iturbe recalls this meeting differently. He claims Beckmann demanded that one of the Iturbes quit or W & G would fire one of them
 
 
 [3]
 To establish a prima facie case for discriminatory discharge where the employer's articulated, non-discriminatory reason for the challenged action is a reduction-in-force, a plaintiff must show that she: (1) belonged to the protected class; (ii) was discharged; and (iii) was performing the job satisfactorily at the time of her discharge. She also must show that following discharge, persons outside her protected class were retained for the same position or there was other evidence that the employer did not treat national origin or sex neutrally. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir.1991); E.E.O.C. v. Western Electric Co., 713 F.2d 1011, 1014-15 (4th Cir.1983)
 
 
 [4]
 The public policy of North Carolina is essentially identical to the public policy articulated in Title VII. See North Carolina Dept. of Correction v. Gibson, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983)
 
 
 [5]
 To make a prima facie case of retaliation an employee must prove: (1) that he was engaged in protected activity; (2) that the employer took adverse employment action against him; and (3) that a causal connection existed between the protected activity and the adverse action. Ross v. Communications Satellite Corp., 759 F.2d at 365