EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
**Plaintiff–Appellant,**

v.

**WARFIELD–ROHR CASKET COM-
PANY, INCORPORATED, De-
fendant–Appellee.**

No. 03–1648.

United States Court of Appeals,
Fourth Circuit.

Argued: Feb. 25, 2004.

Decided: April 8, 2004.

---

**ARGUED:** Susan Lisabeth Starr, Appellate Services Division, United States Equal Employment Opportunity Commission, Washington, D.C., for Appellant. Charles Scott Hirsch, Ballard, Spahr, Andrews & Ingersoll, L.L.P., Baltimore, Maryland, for Appellee. **ON BRIEF:** Eric S. Dreiband, General, Vincent J. Blackwood, Assistant General, Carolyn L. Wheeler, Acting Associate General, United States Equal Employment Opportunity Commission, Washington, D.C., for Appellant.

Before WILKINS, Chief Judge, MICHAEL, Circuit Judge, and HAMILTON, Senior Circuit Judge.

Reversed and remanded by published opinion. Chief Judge WILKINS wrote the opinion, in which Judge MICHAEL and Judge HAMILTON joined.

WILLIAM W. WILKINS, Chief Judge:

The Equal Employment Opportunity Commission (EEOC) appeals a district court order granting summary judgment to Warfield–Rohr Casket Company, Incorporated (Warfield–Rohr) in the EEOC's action alleging that Warfield–Rohr's termination of Frederick Kuehnl violated the Age Discrimination in Employment Act of 1967 (ADEA), *see* 29 U.S.C.A. §§ 621–34 (West 1999 & Supp.2003). Because the

record does not conclusively show that Warfield–Rohr would have terminated Kuehnl absent any discriminatory motive, we reverse and remand for further proceedings.

## I.

Warfield–Rohr sells burial caskets to funeral homes in Maryland, Virginia, and Delaware. As part of its business, the company installs custom interiors in caskets—a process known as "trimming." In 1971, Warfield–Rohr hired Kuehnl to trim caskets. At that time, approximately 13 people were working in the company's casket trimming room. In 1982, Kuehnl was promoted to foreman of the trimming room, and he became a salaried employee. Following his promotion, Kuehnl continued to trim caskets and also took on supervisory and other duties.

Over the course of Kuehnl's employment with Warfield–Rohr, the workload in the trimming room and the need for employees there substantially declined. By the beginning of 1998, only two employees besides Kuehnl were working in the trimming room. After one of those employees resigned in January 1998, Kuehnl urged the owner of Warfield–Rohr, William Howard Ayres, to hire a replacement. Ayres was reluctant to do so because he believed that two people could handle the workload in the trimming room; nonetheless, he ultimately followed Kuehnl's recommendation and hired 33–year–old Matthew Moore in March 1998.

Kuehnl claims that in April 2000, Ayres asked him how old he was and when he was planning to retire; Kuehnl, who was then 56, noted this event in his personal journal. Three weeks later, Ayres terminated Kuehnl. Kuehnl alleges that he had the following conversation with Ayres concerning his termination:

[Ayres] said to me, you're fired. You're getting too f——ing old, you're making too much f——ing money. Get the f—— out.

I said, Howard, can't I work less time and less pay to keep my job until 65? He says, no, get the f—— out. I said, why can't you get rid of Matt [Moore] instead of myself? He said to me, Matt could give him more years and he needed a job. I said, I need a job, too. J.A. 157. Later that day, Kuehnl made another entry in his journal recounting the conversation; the entry does not mention Ayres' alleged statement that Kuehnl was "getting too ... old" and indicates that Ayres told Kuehnl, "I can't afford you." *Id.* at 32.

In contrast to Kuehnl's version of events, Ayres denies making any of the alleged statements regarding Kuehnl's age, instead claiming that he terminated Kuehnl because Warfield–Rohr could no longer afford to pay his salary and because he had conflicts with his coworkers. Before terminating Kuehnl, Ayres prepared written notes "to include everything that I had to say to [Kuehnl] and make sure I said them accurately to him." *Id.* at 50. These notes indicate that Ayres was terminating Kuehnl because Ayres "[couldn't] afford [him]," and they reiterate Ayres' belief that the trimming room was "only a 2 man operation." *Id.* at 22–23. Ayres' notes do not mention any problems regarding Kuehnl's relationships with his coworkers.

Approximately ten months after his termination, Kuehnl filed a charge with the EEOC claiming that Warfield–Rohr had discriminated against him because of his age. The EEOC subsequently brought this ADEA action against Warfield–Rohr. Following discovery, both sides moved for summary judgment. In addressing Warfield–Rohr's motion, the

district court recited evidence supporting the two nondiscriminatory reasons offered by the company for terminating Kuehnl: (1) that it could no longer afford to employ him due to financial difficulties and (2) that he had conflicts with his coworkers and supervisors. Based on this evidence, the district court determined that "no rational fact finder could reasonably conclude that [Kuehnl] was terminated because of his age." *Id.* at 19. Accordingly, the district court granted summary judgment to Warfield–Rohr.

## II.

■ We review the grant of summary judgment de novo, viewing the disputed facts in the light most favorable to the EEOC. *See Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir.2002). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).

■ As is relevant here, the ADEA makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C.A. § 623(a)(1); *see Gen. Dynamics Land Sys., Inc. v. Cline*, —— U.S. ——, ——, 124 S.Ct. 1236, 1243, 157 L.Ed.2d 1094 (2004) (explaining that the ADEA "protect[s] a

relatively old worker from discrimination that works to the advantage of the relatively young"). An ADEA claim may be established through two alternative methods of proof: (1) a "mixed-motive" framework, requiring evidence that the employee's age motivated the employer's adverse decision, or (2) a "pretext" framework identical to the *McDonnell Douglas* burden-shifting analysis used in Title VII cases. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir.2004) (en banc). Here, the district court applied the mixed-motive framework in analyzing Warfield–Rohr's summary judgment motion, and the EEOC relies on that framework in this appeal.

■ Application of the mixed-motive framework requires, at most, "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir.1995), *abrogated by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003).[1] Viewing the present facts in the light most favorable to the EEOC, Ayres' alleged statements to Kuehnl that he was "getting too ... old" and that Moore—a much younger employee—"could give [Ayres] more years" clearly reflect Ayres' reliance on Kuehnl's age as one of the reasons for his termination. Warfield–Rohr argues, however, that application of the mixed-motive framework is improper

---

1. In *Desert Palace*, the Supreme Court held—contrary to *Fuller* and other circuit decisions—that direct evidence of discrimination is not required in order to apply the mixed-motive framework in Title VII cases. *See Desert Palace*, 123 S.Ct. at 2155. Rather, the Court held that a Title VII plaintiff could also rely on circumstantial evidence to obtain a mixed-motive instruction. *See id.* at 2153–55. We have previously assumed, without deciding, that direct evidence is still a prerequisite for a mixed-motive analysis in ADEA cases. *See Hill*, 354 F.3d at 285 n. 2; *see also Mereish v. Walker*, 359 F.3d 330, 339–40 (4th Cir. 2004) (indicating doubt that *Desert Palace* applies to ADEA claims). We are not called on to decide that issue because the EEOC has presented direct evidence of discrimination—namely, Kuehnl's testimony and journal entries regarding Ayres' alleged discriminatory statements.

because the evidence that the EEOC relies on to support this method of proof—Kuehnl's testimony regarding his conversation with Ayres—is uncorroborated. But aside from the fact that Kuehnl's testimony is partially corroborated by his contemporaneous journal entries, there is no requirement that an employee's testimony be corroborated in order to apply the mixed-motive framework. *See, e.g., Rose v. New York City Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir.2001) (holding that an ADEA plaintiff was entitled to a mixed-motive instruction based on her uncorroborated testimony that her supervisor, who ultimately recommended that she be demoted, had twice threatened to replace her with someone "younger and cheaper" (internal quotation marks omitted)). Lack of corroboration relates only to the credibility and weight of the evidence, which are issues for the jury, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the mixed-motive framework is applicable here.

■ Under the mixed-motive framework, the EEOC "need not demonstrate that [Kuehnl's age] was the sole motivating factor to prevail, so long as it was a motivating factor." *Hill*, 354 F.3d at 284. In other words, "it is sufficient for the [EEOC] to demonstrate that [Warfield–Rohr] was motivated to take the adverse employment action by both permissible and forbidden reasons." *Id.* If the EEOC makes this showing, Warfield–Rohr can nonetheless avoid liability by proving that it would have terminated Kuehnl even in the absence of a discriminatory motive. *See Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–45, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (plurality opinion); *id.* at 276–77, 109 S.Ct. 1775 (O'Connor, J., concurring in the judgment).[2]

■ There is no question that Ayres' alleged statements to Kuehnl that he was "getting too ... old" and that Ayres was retaining Moore because he "could give [Ayres] more years" would support a jury finding that Kuehnl's age was a motivating factor in Warfield–Rohr's decision to terminate him. Thus, Warfield–Rohr is entitled to summary judgment only if the record demonstrates as a matter of law that the company would have terminated Kuehnl even if it had not considered his age.

Warfield–Rohr argues, and the district court agreed, that the company would have terminated Kuehnl regardless of his age because (1) it could no longer afford to pay his salary and (2) he had a history of conflicts with his coworkers. Warfield–Rohr's claim that it could no longer afford Kuehnl's salary is generally supported by evidence that Warfield–Rohr's sales and profits declined sharply during the years

**2.** As part of the Civil Rights Act of 1991 ("1991 Act"), Congress eliminated an employer's ability to avoid liability in certain Title VII cases by showing that it would have made the same decision in the absence of a discriminatory motive. Under the 1991 Act, liability is established once the employee proves that a protected trait was a motivating factor for the employer's decision, *see* 42 U.S.C.A. § 2000e–2(m) (West 2003); a showing by the employer that it would have made the same decision absent a discriminatory motive limits only the remedies available to the employee, *see* 42 U.S.C.A. § 2000e–5(g)(2)(B) (West 2003). However, Congress has not amended the ADEA in a similar fashion. *See Mereish v. Walker*, 359 F.3d 330, 340 (4th Cir.2004). Thus, ADEA mixed-motive cases remain subject to the burden-shifting rules of *Price Waterhouse*. *See Hill*, 354 F.3d at 285 n. 2 (assuming that the 1991 Act does not apply to the ADEA and therefore that the *Price Waterhouse* rules still govern ADEA claims); *see also Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 552 n. 7 (4th Cir.1999) (holding that the *Price Waterhouse* framework still controls Title VII retaliation claims because the 1991 Act does not expressly include such claims).

immediately preceding Kuehnl's termination. And, even under Kuehnl's version of the facts, Ayres told Kuehnl at the time of his termination that the company could not afford him because he was "making too much ... money." During that same conversation, however, Kuehnl offered to reduce his hours and pay, yet Ayres summarily rejected that proposal. Further, Kuehnl claims that when he inquired why Ayres was not terminating Moore instead, Ayers responded that Moore "could give him more years." Based on this evidence, a jury could reasonably conclude that, notwithstanding Warfield–Rohr's financial problems, the company would not have terminated Kuehnl if his age had not been a consideration.[3]

Warfield–Rohr's assertion that Kuehnl had conflicts with his coworkers is supported by testimony from Ayres and various Warfield–Rohr employees. This testimony indicates that at least one former employee in the trimming room resigned due to conflicts with Kuehnl and that the two other remaining employees considered resigning for similar reasons. However, Ayres' notes—which purportedly include all the reasons for Kuehnl's termination—nowhere mention coworker conflicts. Nor does it appear that Ayres raised that issue

with Kuehnl at the time of his termination. In addition, although Warfield–Rohr portrays Kuehnl's inability to get along with his coworkers as a serious problem that had existed for several years prior to his termination, the company apparently never took any significant action to address this problem before terminating Kuehnl.[4] Thus, despite evidence that Kuehnl did not get along with his coworkers, a jury could reasonably conclude that Warfield–Rohr would not have terminated Kuehnl if his age had not been a factor.

### III.

In sum, although the record contains evidence of plausible, nondiscriminatory reasons that might have supported Warfield–Rohr's decision to terminate Kuehnl, that evidence does not conclusively show that the company would have terminated him if his age had not been considered. Accordingly, we reverse the order of the district court granting summary judgment to Warfield–Rohr and remand for further proceedings.

*REVERSED AND REMANDED*

---

3. Warfield–Rohr further argues that Kuehnl's termination was justified because, despite Ayres' contrary view, Kuehnl had previously urged him to hire a third employee for the trimming room. However, a jury could reasonably conclude that, regardless of Kuehnl's arguably ill-advised recommendation to hire a third employee, Warfield–Rohr's ultimate decision to terminate Kuehnl rather than Moore was based on Kuehnl's age. And, although Kuehnl had previously insisted that he needed two other employees to run the trimming room, it is not clear that Kuehnl still maintained this view two years later when he was terminated—particularly since the workload had continued to shrink. Indeed, Kuehnl suggested to Ayres that he terminate Moore instead, indicating that Kuehnl was willing to

work with only one other employee rather than lose his job.

Warfield–Rohr also contends that Kuehnl's termination was justified because he was spending the majority of his time on tasks other than casket trimming. However, as Warfield–Rohr acknowledged at oral argument, disputed issues of fact exist regarding whether Kuehnl was legitimately occupied with other assigned tasks.

4. Based on the record materials before us, it appears that the only action Warfield–Rohr management took in connection with Kuehnl's conflicts with his coworkers was a single statement from one of the company's vice-presidents instructing Kuehnl "not to ride [his coworkers], just not be as hard on them." J.A. 173.