**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-1868**

---

ALTON RAY LOVELESS,

Plaintiff - Appellee,

versus

JOHN'S FORD, INCORPORATED, d/b/a Jerry's
Leesburg Ford Lincoln Mercury,

Defendant - Appellant.

---

**No. 05-2194**

---

ALTON RAY LOVELESS,

Plaintiff - Appellant,

versus

JOHN'S FORD, INCORPORATED, d/b/a Jerry's
Leesburg Ford Lincoln Mercury,

Defendant - Appellee.

---

Appeals from the United States District Court for the Eastern
District of Virginia, at Alexandria. Claude M. Hilton, Senior
District Judge. (CA-04-1209-1)

---

Submitted: April 6, 2007                     Decided: May 9, 2007

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

———————

Affirmed in part, reversed in part, and remanded by unpublished per curiam opinion.

———————

Michael G. Charapp, Brad D. Weiss, CHARAPP & WEISS, McLean, Virginia, for Appellant/Cross-Appellee. Annette K. Rubin, Leesburg, Virginia, for Appellee/Cross-Appellant.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant John's Ford, Incorporated, appeals from the district court's July 2005 denial of its motion for judgment as a matter of law, or in the alternative a new trial, after a jury decided that it had willfully violated the Age Discrimination in Employment Act ("ADEA") and returned a verdict in favor of Alton Loveless. See Loveless v. John's Ford, Inc., No. 04-1209 (E.D. Va. July 11, 2005) (the "First Opinion"). Plaintiff Loveless has cross-appealed from the court's September 23, 2005 denial of his motion for front pay and his separate motion for liquidated damages (the "Second Opinion").[1] As explained below, we affirm the rulings in the First Opinion, and affirm the Second Opinion in part and reverse in part. More specifically, we affirm the Second Opinion's denial of Loveless's request for front pay and reverse its denial of his motion for liquidated damages.

I.

John's Ford is a Virginia corporation that operates several automobile dealerships in Northern Virginia.[2] Alton Loveless was

_____

[1]The First Opinion is found at J.A. 405-07, and the Second Opinion is found at J.A. 415-19. (Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.)

[2]Because this appeal challenges the denial of a motion for judgment as a matter of law, the facts underlying John's Ford's appeal are presented in the light most favorable to Loveless, and we draw all inferences in his favor. See Duke v. Uniroyal, Inc.,

3

first employed by John's Ford in June 1975, and he worked until November 2000 in its Annandale, Virginia, dealership as a service advisor and service manager. In November 2000, Loveless was promoted to Parts and Service Director in John's Ford's Leesburg, Virginia, dealership under the supervision of Stephen Cohen. On October 14, 2003, Cohen advised Loveless that he was being "retired," as were all department heads. Loveless's discharge from John's Ford was made effective that day, and he was thereafter unable to secure employment.

On October 8, 2004, Loveless filed his complaint in this case in the Eastern District of Virginia, alleging a wrongful termination by John's Ford on the basis of age, in violation of the ADEA. The dispute was tried in the district court before a jury on June 1 and 2, 2005. Based on the evidence presented at trial, Loveless made numerous improvements in the Parts and Services Department while employed at the Leesburg dealership, successfully meeting or exceeding the goals set by Ford Motor Company and John's Ford. During this time, he received no warnings or criticisms from his supervisor concerning his job performance. Loveless had received one criticism from a co-worker, Tony Hudson, who conveyed to him, apparently at Cohen's request, the concern that Loveless was spending too much time smoking and drinking coffee on the job. Loveless had confronted Cohen in that regard, explaining that when

928 F.2d 1413, 1417 (4th Cir. 1991).

he was smoking he was still doing his job overseeing the Parts and Service Department, and offering to resign. Cohen rejected the offer, however, talking Loveless out of quitting. Both prior to and at the time Loveless was discharged, Cohen made age-related statements concerning Loveless, Wesley Brown (the dealership's Sales Manager), and Wilber Laznic, another older employee.[3]

Loveless also presented evidence on the damages he suffered as a result of his discharge. Christopher Brown, an accountant testifying about Loveless's back-pay damages, opined that Loveless had lost approximately $250,000 in back wages as a result of his discharge. John's Ford challenged Brown's testimony on the basis of an evidence spoliation claim arising from Brown's failure to produce a worksheet he had used to gather information and create a chart used at trial.[4]

---

[3]During the conversation in which Loveless was discharged, Cohen referred to Wes Brown, an older employee who served as Sales Manager, as "an F'n dinosaur" and told Loveless that Brown "is next" and "should have been gone a long time ago." J.A. at 593. An assistant service manager, Vicki Surface, heard Cohen refer to another older employee, Wilber Laznic, as a "dinosaur." Id. at 615.

[4]In its defense, John's Ford presented evidence of Cohen's dissatisfaction with Loveless's job performance, including allegations of absenteeism. According to John's Ford, Loveless missed worked to assist on the estate of an elderly customer he had befriended, and to assist his girlfriend in starting a hair salon business. John's Ford also presented evidence of customer complaints concerning the Service Department at Leesburg while it was under Loveless's supervision. The jury, by its verdict, rejected John's Ford's defense.

5

On June 2, 2005 the jury returned its verdict in favor of Loveless in the sum of $250,000, finding that John's Ford had willfully violated the ADEA. After the trial, John's Ford filed a motion for judgment as a matter of law, or in the alternative seeking a new trial. In his own post-trial motions, Loveless sought attorney fees and costs, liquidated damages, and either reinstatement or front pay. By its First Opinion, the district court, on July 11, 2005, denied John's Ford's motion for judgment as a matter of law and for a new trial. By its Second Opinion, the court, on September 23, 2005, granted Loveless his attorney fees and costs, but denied his request for liquidated damages and for reinstatement or front pay. Each of the parties has filed a notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review de novo a district court's denial of a motion for judgment as a matter of law. See Price v. City of Charlotte, 93 F.3d 1241, 1245 (4th Cir. 1996). When assessing whether a verdict is properly supported, we view the evidence in the light most favorable to the prevailing party, giving it the benefit of all permissible inferences. See Duke v. Uniroyal, Inc., 928 F.2d 1413, 1417 (4th Cir. 1991). If a reasonable jury could have returned a verdict for the prevailing party, we must defer to the jury

6

verdict.  See id.  The award or denial of a new trial is entrusted to the sound discretion of the trial court, and a denial thereof may only be reversed when the court has abused its discretion. Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998). We also review for abuse of discretion a district court's refusal to impose sanctions for the spoliation of evidence.  See Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001).

We review a district court's denial of an award of front pay for abuse of discretion, see Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 504 (4th Cir. 2001), and we review findings of fact on which such an award is based for clear error, see Taylor v. Home Ins. Co., 777 F.2d 849, 860 (4th Cir. 1985).  Whether the ADEA mandates an award of liquidated damages to a prevailing ADEA plaintiff after a jury finding of willfulness is a legal question that we review de novo.  See United States v. Segers, 271 F.3d 181, 183 (4th Cir. 2001).

## III.

There are two appeals presented in this proceeding.  First, John's Ford has appealed the rulings made in the district court's First Opinion, denying its motion for judgment as a matter of law, or in the alternative a new trial.  Second, Loveless has cross-appealed from the court's rulings in the Second Opinion, denying

7

his request for front pay and declining to make an award of liquidated damages.[5]

## A.

John's Ford makes two basic contentions in its appeal of the First Opinion: (1) that the district court should have awarded judgment as a matter of law, and in the alternative should have awarded a new trial, because the evidence was insufficient to establish Loveless's claim of age discrimination; and (2) that the court should have granted judgment as a matter of law, and in the alternative a new trial, because of Brown's spoliation of the evidence upon which he based his opinions. We address these contentions in turn.

## 1.

Under the ADEA, an employer may not discharge any employee because of age. See 29 U.S.C. § 623(a)(1). Generally, an ADEA plaintiff may prevail in an age discrimination case by proceeding under either a "mixed-motive" or a "pretext" framework. See Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284-85 (4th Cir. 2004). John's Ford contends that the evidence was insufficient to establish Loveless's age discrimination claim under either of these methods of proof.[6] As explained below, this contention fails.

[5]Loveless does not, in this appeal, challenge the district court's denial of his request for reinstatement.

[6]John's Ford also contends on appeal that Loveless failed to present sufficient evidence to establish a disparate impact case.

8

a.

John's Ford first asserts that Loveless was unable to prove age discrimination under the mixed-motive scheme because he did not present sufficient evidence to establish that Cohen's decision to discharge him was motivated by age.  A showing by either direct or circumstantial evidence that age motivated an employer's adverse employment decision need not establish that the employee's age was the sole motivating factor; the plaintiff must only show that his age was a motivating factor in the adverse decision.  See  Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 284 (4th Cir. 2004).  In a "mixed-motive" case, it is sufficient that the plaintiff-employee show that his employer was motivated to take an adverse employment action by both forbidden and permissible reasons.  See id.

Here, there was ample direct evidence that Loveless's age was a motivating factor in Cohen's decision, made on behalf of John's Ford, to discharge Loveless.  Loveless testified that, on October 14, 2003, Cohen told him he was being "retired."  When Loveless asked why, Cohen told him that he was "replacing all his department heads.  That he need[ed] younger, more aggressive Managers, people that he [could] groom to the way that he does business."  J.A. 592.

---

Loveless did not allege a disparate impact claim, however, see Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989), and the district court did not permit Loveless to argue any such claim.  We thus need not reach this issue.

9

During this conversation, Cohen referred to Wes Brown, another older John's Ford employee, as "an F'n dinosaur" and told Loveless that Brown "is next" and "should have been gone a long time ago." Id. at 593.[7] Vicki Surface, an assistant service manager, heard Cohen refer to another older employee, Wilber Laznic, as a "dinosaur." Id. at 615.

John's Ford's contention that there was an insufficient nexus between the foregoing comments and Loveless's termination is also without merit. Indeed, one of Cohen's derogatory comments was made when Loveless was terminated, and in direct response to Loveless's question of "why me?" In order for such remarks to be indicative of discrimination, they must not be isolated, and must be "related to the employment decision in question." Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (internal quotation marks omitted); see also O'Connor v. Consol. Coin Caterers, Corp., 56 F.3d 542, 549-50 (4th Cir. 1995) (finding insufficient nexus between age-related statements and adverse employment action where plaintiff could not recall context of first statement, another statement was made in connection with ability to

---

[7]John's Ford contends that the evidence regarding Wes Brown is irrelevant because another jury had found that Brown was not fired due to his age. John's Ford failed to object on this basis at trial, however, and it does not maintain that this contention warrants relief under plain error review. See Brickwood Contractors v. Dataset Eng'g Inc., 369 F.3d 385, 396-97 (4th Cir. 2004) (holding that issues raised for first time on appeal may only be considered in limited circumstances).

play golf, and third statement was no more than innocuous commentary on fact that all people grow older); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 511-12 (4th Cir. 1994) (concluding that statement "there comes a time when we have to make way for younger people" reflected "no more than a fact of life" and was too remote to show age discrimination).  In these circumstances, the evidence before the jury was sufficient to demonstrate a nexus between Cohen's comments and Loveless's discharge.[8]

b.

John's Ford also contends on appeal that Loveless failed to prove his ADEA claim under the pretext scheme of proof, because he failed to establish a prima facie case of age discrimination and failed to rebut the legitimate nondiscriminatory reason that John's Ford gave for his discharge.  To make a prima facie showing of age discrimination under the pretext framework, a plaintiff-employee is obliged to satisfy four factors, that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was at the relevant time performing his duties at a level that met his employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified applicant

---

[8]We also reject John's Ford contention that Loveless's recollections are insufficient to prove age discrimination under the ADEA because they are uncorroborated.  Any such lack of corroboration goes only to the credibility and weight of the evidence.  See EEOC v. Warfield-Rohr Casket Co., 364 F.3d 160, 164 (4th Cir. 2004).

11

outside the protected class. See Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004). The only disputed point here is the third of these four factors, whether Loveless sufficiently established that he was performing his duties at a level that met John's Ford's legitimate expectations at the time of his discharge. Put simply, the evidence in this case, viewed in the proper light, established that Loveless was performing his duties at a level that met John's Ford's legitimate expectations when he was fired. Indeed, Loveless and the Parts and Service Department at Leesburg had received numerous awards during the time he served as its Director. For example, John's Ford became "Blue Oval Certified" for the first time under Loveless's supervision, and Cohen described Loveless's handling of that process as "beautiful[]." J.A. 627. Under Loveless's supervision, the Service Department won Ford's "Satisfaction Pays" contest in 2002, and the Leesburg dealership qualified for Ford's "President's Award" that same year. Loveless also achieved a Master Certification as Service Manager, Warranty Administrator, and Sales Manager in 2003, and Cohen confirmed that the Department was named one of the "Best of Leesburg" by the local newspaper that year.

Although John's Ford presented the jury with a competing account of Loveless's performance, we are, in assessing this contention, obliged to view the evidence in the light most favorable to Loveless. See Duke v. Uniroyal, Inc., 928 F.2d 1413,

12

1417 (4th Cir. 1991). In so doing, we are satisfied that a reasonable jury was entitled to find that Loveless was, at the time of his discharge, performing his duties at a level that met John's Ford's legitimate expectations. As a result, we must reject the contention that Loveless failed to establish a prima facie case of age discrimination under the ADEA.

When a prima facie case has been presented, an inference of age discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action, that is, Loveless's discharge by John's Ford. Williams v. Cerberonics, Inc., 871 F.2d 452, 455-56 (4th Cir. 1989). If a legitimate, nondiscriminatory reason for the discharge is then shown, the burden returns to the plaintiff to show, by a preponderance of the evidence, that the nondiscriminatory reason is pretextual. Id. at 456. In this instance, John's Ford articulated a legitimate, non-discriminatory reason for its discharge of Loveless. Cohen testified that Loveless "had lost his focus and his desire to fulfill the necessary functions to remain as the service manager." J.A. 475-76. Although there were no records on Loveless's attendance, Cohen asserted that it was poor, that Loveless had an "overall laissez-faire attitude," that he was indecisive, and that customers had complained about him. J.A. 48. These reasons were presented by John's Ford as its actual basis for Loveless's discharge.

13

Loveless was thus required to demonstrate that John's Ford's explanation was merely a "pretext" for discharging him. To establish such pretext, Loveless was obliged to show that John's Ford's otherwise legitimate explanation for his discharge was "unworthy of credence," and was therefore a coverup for age discrimination. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). Loveless presented sufficient evidence to warrant the jury's rejection of John's Ford's explanation for his termination as pretext. First, contradictions between an employer's explanation for an adverse employment action at trial and its statements to the employee at the time of discharge constitute strong evidence of pretext. See Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 928 F.2d 118, 122-23 (4th Cir. 1991) (finding pretext established where employer's explanation for termination at trial contradicted explanation at time of discharge). Here, Cohen's explanation at trial for Loveless's termination (poor work performance) contradicted his explanation to Loveless when he was fired (that Cohen wanted younger, more aggressive managers he could groom to his management style). Second, despite Cohen's repeated references to poor attendance, there were no attendance records showing that Loveless had missed work, and there were no records documenting any customer complaints about him. Finally, Cohen was unable to identify any occasion where he gave Loveless notice — in person or in writing — of any

14

dissatisfaction with his job performance.  Loveless thus provided sufficient evidence of pretext to support the jury verdict, and the denial of John's Ford's motion for judgment as a matter of law must be sustained.

2.

In its second contention on the First Opinion, John's Ford maintains that the district court erred in denying judgment as a matter of law on its spoliation of evidence claim relating to Christopher Brown, Loveless's expert accountant on damages.[9]  On this point, John's Ford asserts that Brown's failure to preserve a worksheet underlying his opinions obliged the district court to grant judgment as a matter of law or a new trial.

When a party either fails to preserve or destroys potential evidence in a foreseeable litigation, it can be deemed to have engaged in the "spoliation of evidence," and a trial court may use its inherent power to impose an appropriate sanction.  <u>See Silvestri v. General Motors Corp.</u>, 271 F.3d 583, 590 (4th Cir. 2001).  We have recognized that a judicial response to a spoliation of evidence should serve the twin purposes of "leveling the evidentiary playing field and . . . sanctioning the improper

---

[9]John's Ford's also contends that Brown's evidence was improper because he actually had no opinion on Loveless's back pay damages.  Brown's testimony reveals, at most, some semantic confusion about the term "back wage," a point that does not alter the substance of his views.  We thus reject John's Ford's contention in this regard.

15

conduct." <u>Vodusek v. Bayliner Marine Corp.</u>, 71 F.3d 148, 156 (4th Cir. 1995). The range of options available to a trial court in such situations includes dismissal (or here, judgment as a matter of law), but such a severe sanction should only be imposed when a lesser sanction will fail to serve the foregoing purposes. <u>Silvestri</u>, 271 F.3d at 590. Moreover, a dismissal on the basis of spoliation of evidence is only appropriate if the conduct was "so egregious as to amount to a forfeiture of [the] claim," or if the effect of the conduct was "so prejudicial that it substantially denied the defendant the ability to defend the claim." <u>Id.</u> at 593.

In this case, there is no evidence that either Loveless, his lawyers, or Brown, acted so egregiously as to warrant judgment as a matter of law. Indeed, the information Brown gathered from Loveless and wrote by hand onto his missing worksheet had been entered into Brown's computer and transformed into a chart used by Brown at trial. Such a situation is a far cry from those instances of spoliation of evidence that could establish bad faith. <u>See</u> <u>id.</u> at 593-94 (concluding that even where attorney knew unpreserved vehicle was central piece of evidence and defendant was not notified of claim until three years had passed, it was unclear whether failure to preserve would justify dismissal). These circumstances constitute, at most, a less obvious type of spoliation, where evidence is simply transformed from one form into another. <u>See</u> Jamie S. Gorelick, Stephen Marzen & Lawrence Solum,

16

Destruction of Evidence § 1.1.  There is no indication in this record that Brown's failure to preserve the worksheet was intended to deprive the jury or John's Ford of any evidence, and these circumstances may not even warrant an instruction on an adverse inference, let alone judgment as a matter of law.  See S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co. , 695 F.2d 253, 259 (7th Cir. 1982) (concluding that destruction of handwritten notes used to draft memorandum did not support adverse inference where witness did not preserve notes because they were illegible and all necessary information was in memorandum).

There is also no indication that Brown's failure to preserve the worksheet was prejudicial to John's Ford ability to defend against Loveless's ADEA claim.  First, the information Brown placed on the worksheet concerned the value of Loveless's lost employment with John's Ford, and it was data that John's Ford had access to and presented through its own expert.  Second, John's Ford emphasized the absence of the worksheet during its cross-examination of Brown, and the jury considered that point in assessing Brown's testimony.  In these circumstances, the trial court did not abuse its discretion in declining to grant judgment to John's Ford as a matter of law, and we thus reject its appeal on this contention.[10]

---

[10]We also reject John's Ford's alternative request for a new trial on the sufficiency of the evidence and the spoliation issues. In assessing a motion for a new trial, a trial judge may set aside

Turning to Loveless's cross-appeal in this matter, he raises two contentions of error with respect to the district court's Second Opinion. First, he maintains that the court erred in denying his request for front pay. Second, he asserts that it also erred in denying his request for liquidated damages under the ADEA. See 29 U.S.C. § 626(b). We address these contentions in turn.

1.

In contending that the district court erred in failing to award front pay on his ADEA claim, Loveless argues that the court abused its discretion when it appeared to focus solely on Loveless's lack of diligence in pursuing replacement employment.[11] John's Ford presented evidence that Loveless had sought employment during the first six months after his October 2003 discharge, failed to make any employment inquiries for four months in 2004, and then made inquiries only once a month thereafter. John's Ford

---

a verdict in three circumstances: (1) if it is against the clear weight of the evidence; (2) if it is based on evidence which is false; or (3) if the verdict will result in a miscarriage of justice, notwithstanding that there may be sufficient evidence to preclude a directed verdict. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 650 (4th Cir. 2002). Because the jury's verdict was not against the clear weight of the evidence, and upholding the verdict would not result in a miscarriage of justice, there was no abuse of discretion by the district court on either of these points. We thus also affirm the First Opinion's denial of a new trial.

[11]Front pay is payment for lost future earnings. See Charles R. Richey, Manual on Employment Discrimination Law and Civil Rights Actions in Federal Courts § 3.103 (2d ed. 1994).

also presented evidence that the median duration of an unemployment period at that same time, according to the Bureau of Labor Statistics, was just over ten weeks.

The equitable remedy of front pay is generally available when an employer has terminated an employee unlawfully and the employee's reinstatement is not possible. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1423 (4th Cir. 1991). Front pay is designed to place a plaintiff in the financial position he would have been in had he been reinstated. See Bruso v. United Airlines, Inc., 239 F.3d 848, 862 (7th Cir. 2001). Whether an award of front pay should be made in a case such as this rests squarely within the trial court's discretion. See Duke, 928 F.2d at 1424. Cohen testified that Loveless had "burned the bridge" and could not return to work for John's Ford. Thus, it fell to the trial court to determine how much, if any, front pay Loveless should receive on his ADEA claim.

There is no precise formula for determining whether or in what sum an award of front pay should be made. See id. at 1424 ("The appropriate method for addressing the difficult question of providing a remedy which anticipates potential future losses requires an analysis of all the circumstances existing at the time of trial."). The district court was thus entitled, in its front pay ruling, to consider the evidence that Loveless had been less than diligent in attempting to secure replacement employment. See

19

<u>Barbour v. Merrill</u>, 48 F.3d 1270, 1280 (D.C. Cir. 1995) (identifying factors, including plaintiff's efforts in mitigating damages, that may properly be considered in awarding front pay). As a result, we are unable to find an abuse of discretion in this regard, and we affirm the court's denial of Loveless's claim to front pay.

2.

Finally, Loveless contends that the court was obliged, under the ADEA, to make an award of liquidated damages to him on the basis of the jury's finding of willfulness.[12] In its Second Opinion, the court declined to do so, concluding that such an award would bestow a windfall on Loveless, in that the jury had already awarded him $250,000 in back wages. As explained below, we agree with Loveless that, in light of the applicable provisions of the ADEA, plus the Supreme Court's decision in <u>Trans World Airlines, Inc. v. Thurston</u>, 469 U.S. 111 (1985), and the pertinent decisions of our sister circuits, he was entitled to an award of liquidated damages once the jury found that John's Ford had willfully violated the ADEA.

---

[12]The Fair Labor Standards Act ("FLSA") provides that any employer who violates the FLSA "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The ADEA's liquidated damages provision is to be enforced in accordance with the FLSA's § 216, except "[t]hat liquidated damages shall be payable only in cases of willful violations of [the ADEA]." <u>See</u> 29 U.S.C. § 626(b).

20

Under the ADEA, an award of liquidated damages should only be made if a violation of the statute if found to be willful. See 29 U.S.C. §§ 216(b), 626(b). However, the applicable provision of the ADEA indicates that an award of liquidated damages is mandatory upon a finding of willfulness. See 29 U.S.C. § 626(b) ("[L]iquidated damages shall be payable only in cases of willful violations of [the ADEA]." (emphasis added)). The Supreme Court has strongly indicated that a liquidated damages award to a prevailing ADEA plaintiff is mandatory upon a jury finding of willfulness. See Thurston, 469 U.S. at 125. In Thurston, the Court observed that the ADEA must be enforced in accordance with the Fair Labor Standards Act ("FLSA"), but observed that the remedial schemes of those Acts are not identical. See id. The Court stressed one specific difference, that although the FLSA renders an award of liquidated damages mandatory in all instances of its violation, the ADEA entitles prevailing plaintiffs to liquidated damages "only in cases of willful violations." Id. The Court thus did not explicitly hold that a liquidated damages award is mandatory upon a finding of willfulness. See id. The Court did, however, recognize that the ADEA was to be distinguished from the FLSA (which mandates double damages in all cases where FLSA violations are established) by limiting ADEA liquidated damages awards to situations where the ADEA violation is found to be willful. See id. Thus, Thurston lends strong support to the

21

proposition that, upon a jury's finding of willfulness, a liquidated damages award is mandatory for a prevailing ADEA plaintiff.

Several of our sister circuits have explicitly held that a liquidated damages award to a prevailing ADEA plaintiff is mandatory upon a finding of willfulness. See Tyler v. Union Oil Co., 304 F.3d 379, 401 (5th Cir. 2002) ("[L]iquidated damages in an amount equal to the back pay award are mandatory upon a finding of willfulness."); Mathis v. Phillips Chevrolet, Inc., 269 F.3d 771, 777 (7th Cir. 2001) ("[C]ourts are required to assess liquidated damages in the same amount as the compensatory damages if the employer's violation of the [ADEA] was 'willful.'"); Greene v. Safeway Stores, Inc., 210 F.3d 1237, 1246 (10th Cir. 2000) ("Once a violation of the ADEA is determined to be willful, an award of liquidated damages is mandatory."); McGinty v. State, 193 F.3d 64, 69 (2d Cir. 1999) (assuming that because ADEA "incorporat[es] the corresponding provisions of the [FLSA] . . . the payment of liquidated damages in an amount equivalent to a plaintiff's award for back pay and benefits where the statutory violation was 'willful'" is mandatory); Hill v. Spiegel, Inc., 708 F.2d 233, 238 (6th Cir. 1983) ("Once . . . the jury found a willful violation . . . the award of liquidated damages was the duty of the trial court."). Our circuit has not explicitly recognized that § 626(b) of the ADEA mandates that a liquidated damages award be made to a

prevailing ADEA plaintiff upon a finding of willfulness. The controlling authorities support application of such a rule, however, and the foregoing decisions are consistent with our reading of the applicable statutory provision. We thus see a liquidated damages award as mandatory in this case, where Loveless is a prevailing plaintiff relying on a jury finding of a willful violation of the ADEA by John's Ford.

In the context of this case, it is significant that John's Ford has not challenged the propriety of the jury instruction on willfulness, either at trial or in this appeal. And the jury was fully instructed on this point, as follows:

> If the defendant knew that its adverse employment action was a violation of the law or acted in reckless disregard of that fact, then its conduct was willful. If the defendant did not know or knew that the law was potentially applicable, but did not act in reckless disregard as to whether its conduct was prohibited by the law, even if it acted negligently, then such conduct was not willful.

J.A. 744. This instruction appears to be a straightforward and correct statement of the law as enunciated by the Supreme Court. See Thurston, 469 U.S. at 128. Of additional importance, the evidence in this case, assessed under the appropriate standard, that is, in the light most favorable to Loveless, see Duke, 928 F.2d at 1417, was sufficient to support the jury's finding of a willful violation of the ADEA. Cohen knew that Loveless was within the age group protected by the ADEA, and Loveless presented evidence that contradicted John's Ford's asserted basis for

23

terminating him, that is, poor work performance.  The jury was thus entitled to find that John's Ford's discharge of Loveless was on the basis of his age, and that its conduct was a willful violation of the ADEA.  As a result, the district court erred in denying his request for a liquidated damages award, and we reverse and remand on this point.[13]

IV.

Pursuant to the foregoing, we affirm the district court's denial of John's Ford's motion for judgment as a matter of law, or in the alternative, a new trial.  We also affirm its denial of Loveless's motion for front pay.  We reverse the court's failure to make a liquidated damages award to Loveless, and remand on that issue.

AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED

---

[13]The district court's concern that a liquidated damages award would create a windfall for Loveless is not supported by the circumstances.  Although we have recognized that a windfall should not be conferred by such an award, the issue is one of calculation.  See Fariss v. Lynchburg Foundry, 769 F.2d 958, 967 (4th Cir. 1985) (declining to calculate liquidated damages before offsetting back wages claim with lump sum pension that exceeded back wages, because liquidated damages award to plaintiff who suffered no pecuniary loss would bestow windfall).  Unlike in Fariss, Loveless suffered a pecuniary loss of $250,000, and thus a liquidated damages award would not bestow a windfall on him.